Dennis Stewart, CA Bar No. 99152
**GUSTAFSON GLUEK PLLC**
600 W. Broadway, Suite 3300
San Diego, CA 92021
Tel.: (619) 595-3299
Fax: (612) 339-6622
dstewart@gustafsongluek.com

*(Additional counsel listed on signature page)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BISHOY NESSIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLIFF, INC.,<br><br>Defendant. | Case No. 5:23-cv-1048<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**(JURY TRIAL DEMANDED)** |

CLASS ACTION COMPLAINT

Plaintiff, Bishoy Nessim, by and through the undersigned attorneys, on behalf of himself and on behalf of all others similarly situated, brings this action against Defendant, Fliff, Inc. ("Fliff") and seeks all available relief. Plaintiff's allegations are based upon personal knowledge and experience, and upon information and belief, including an investigation conducted by the undersigned attorneys. Plaintiff alleges:

## NATURE OF THE ACTION

1. As part of the November 2022 General Election, California voters overwhelmingly voted against the legalization of online sports gambling within California's borders. Despite that public rebuke, Defendant Fliff facilitates the ability for California residents to make online sports wagers to win real money without any approvals, regulations, oversight, or taxing.

2. To avoid any regulation or legal oversight, Fliff claims to be a free sweepstakes with the chance for users to "play sports prediction games for entertainment." But, in the real world, alleged sports prediction games are nothing more than online sports gambling. Indeed, Fliff gives every user, regardless of local, state, or federal law, the option to bet with "Fliff Cash" which has a dollar-for-dollar equivalence to actual money and that can be withdrawn and wired directly to the users' bank accounts. That's the epitome of an online sports book.

3. Fliff is available for free download on both the Apple and Android devices. Users can play for free by using Fliff Coins, this tactic is known widely as the "free-to-play" business model; Lure the consumer in with the free option, then switch them to playing (in this case gambling) with real money, i.e., "Fliff Cash."

4. Fliff violates the California Unfair Competition Law by operating an illegal online sports book. Fliff has also been unjustly enriched as a result of its unlawful conduct. Plaintiff brings this action on behalf of himself, and all others

CLASS ACTION COMPLAINT    1

similarly situated, and seeks declaratory, injunctive and equitable relief, including recission and restitution, as well as costs and attorneys' fees.

## JURISDICTION

5. This Court has jurisdiction over this litigation pursuant to 28 U.S.C. § 1332(d), as the matter is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure, and the sum of the amount in controversy exceeds $5,000,000. The requirement of minimal diversity is met as this litigation is between a Plaintiff and Defendant of different states. *See* 28 U.S.C. § 1332(d)(2)(A).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Plaintiff resides in this District. The causes of action for the Plaintiff and the putative Class also arose, in part, in California, and the Defendant regularly transacts business in this District and within the State of California.

## PARTIES

**Plaintiff:**

7. Plaintiff, Bishoy Nessim, is a natural person and a citizen of the State of California, who resides in Corona. Mr. Nessim downloaded the Fliff app in approximately December 2022. Afterward, Mr. Nessim made a number of wagers on sports using Fliff Cash he purchased on the app using a Mastercard. Mr. Nessim estimates that he lost somewhere between $7,000–$8,000 gambling online with the Fliff app.

**Defendant:**

8. Defendant, Fliff, Inc. is a Delaware Corporation which lists its principal place of business as a P.O. Box located at 100 South Broad Street, STE 30, Philadelphia, PA 19110. Fliff conducts business throughout this District, the State of California, and the United States.

CLASS ACTION COMPLAINT        2

# FACTUAL ALLEGATIONS

### A. California Voters Rejected Legalized Sports Gambling

9. Prior to 2018, except for in Nevada, federal law made sports gambling illegal in the United States. In 2018, the United States Supreme Court struck down that federal law and ruled that states could legalize betting on sports. *Murphy v. National Collegiate Athletic Association*, 138 S.Ct. 1461 (2018).

10. Since that ruling, 36 states plus the District of Columbia have legalized some form of sports betting, either in person, online, or both. California remained a holdout.

11. In 2020, California law makers tried to negotiate the legalization of sports betting but failed. Then, in November 2022, California's residents were asked to vote up or down on Proposition 27—which was funded by national gaming companies—that would legalize mobile and online sports betting in California. In tandem, the law would also create a new division at the state's Department of Justice to regulate and oversee what would be legalized sports betting.

12. Those who opposed Proposition 27 argued that the proposed law would turn every cell phone, laptop, and tablet into a gambling device, claiming that the widespread availability could not be adequately monitored to keep children from betting and raised fears of creating a generation of gambling addicts.

13. Ultimately, California's voters overwhelmingly (more than 80%) rejected Proposition 27, and as such, online sports gambling remains illegal in California.

B. **Online Gambling is Highly Addictive**

14. Since the Supreme Court's 2018 ruling, and legalization of sports gambling in numerous states, the National Problem Gambling Helpline Network reported a 45% increase in year-over-year inquiries in 2021.[1]

15. The American Psychiatric Association classifies gambling as an addictive disorder, placing it in the same category as tobacco, alcohol, cocaine, cannabis, and opioids.[2] Research shows that mesolimbic dopamine, which provides the brain feelings of reward and pleasure, is released in larger quantities in pathological gamblers than in people in control groups. Gamblers get hooked on that reward.[3]

16. Psychologists say that online betting is immediate, accessible, and nearly effortless.[4] Anyone with a phone, tablet or computer can get started with a credit card. And there's virtually no limit on the bets that can be placed on a single game, even while the game is being played.[5]

17. One way the gambling industry entices people to keep playing is through promotional credits that essentially allow them to begin betting without spending their own money. Rick Benson, founder of Alamos Gambling Treatment Services, said "free play" offers are not just common in casinos but are also heavily marketed by websites and on social media, potentially luring new gamblers into thinking they have nothing to lose.[6]

---

[1] "Addiction experts fear the fallout if California voters legalize sports betting." Los Angeles Times, Oct. 5, 2022 (available at https://www.latimes.com/california/story/2022-10-05/addiction-experts-fear-the-fallout-if-california-legalizes-sports-betting)(last visited January 19, 2023).
[2] *Id.*
[3] *Id.*
[4] *Id*.
[5] *Id*.
[6] *Id*.

CLASS ACTION COMPLAINT    4

### C. Fliff Operates an Unregulated Online Sports Book

18. Fliff is an application available for free download by California residents on both Android and Apple devices. Fliff holds itself out as a "Social Sportsbook with Sweepstakes games, offering sports fans more ways to play and win, with loyalty rewards for every pick!"[7]

19. Capitalizing on the "free play" business model, Fliff's Apple App store posting states that "Fliff is the free-to-play game that never ends! [Fliff] Coins and Fliff Cash are always available to be claimed if you run out so you can always get in on the action."[8] Importantly, and as will be discredited below, Fliff claims that "[t]here is no real money gaming offered in this app and it is intended only for entertainment purposes."[9]

20. As part of the scheme, Fliff gives away Fliff Coins freely. These coins can be used to bet on actual sporting events but offer nothing of real value (other than enticing the user to gamble with real money). The Fliff Coins give the opportunity to earn XP – the app's reward program points – move up leaderboards and earn badges. While no purchase is necessary, and the user can obtain free Fliff Coins every 2 hours, there is, however, also an option for the user to purchase Fliff Coins, and, when purchased, the user often will be given additional Fliff Cash as a bonus for purchasing the coins, essentially a discount on the purchase of Fliff Coins.

---

[7] Fliff on Apple App Store available at: https://apps.apple.com/us/app/fliff-sports-picks/id1489145500
[8] *Id.*
[9] *Id.*

CLASS ACTION COMPLAINT        5

21.     A picture of the Fliff Coin store is below:



22.     Fliff Coins are intended to entice users to switch to gambling with real money and provide Fliff cover from oversight and/or regulation. Indeed, the real thrust of Fliff is the ability for the user to wager with Fliff Cash. Fliff Cash is provided, in certain circumstances, for free as a bonus for purchasing certain Fliff Coin packs. Users can also write to Fliff to request 5.00 in free Fliff Cash if the user has *less* than 5.00 in Fliff Cash at the time of the request.  A user can also earn Fliff Cash by securing a high-ranking in-leaderboard contests.

23.     The free Fliff Cash must be played through at least one time; meaning after acquiring the free Fliff Cash, the user must gamble on a sporting event and win, before it can be withdrawn.

CLASS ACTION COMPLAINT        6

24. Contrary to the statement in the Apple App store that "[t]here is no real money gaming offered in this app"[10] Fliff Cash can be redeemed for actual cash at a rate of $1 for 1.00 Fliff Cash. The minimum that can be withdrawn is $50. In other words, the user needs to win at least 50 in Fliff Cash to make a cash withdrawal of $50.

25. Importantly, a user need not wait to accumulate free Fliff Cash to make sports bets. A user can, instead, purchase Fliff Cash from the Fliff cashier inside the application and use it to bet on real sporting events.

26. By selecting the toggle switch in the upper right-hand corner of the Fliff cashier, the user can switch from purchasing Fliff Coins to Fliff Cash. An image of the app's purchase Fliff Cash option with the toggle switch circled is pictured below.



---

[10] *Id*.

CLASS ACTION COMPLAINT        7

27. The Fliff user can use Apple Pay, Visa or Mastercard, to purchase Fliff Cash in amounts ranging from $1 to $100. The amount of Fliff Cash purchased is a dollar-for-dollar equivalent for actual cash. An image from the app of a Fliff Cash balance related to its actual cash value is below.



28. Just like a legal sports book, the amount of Fliff Cash the user stands to win if their pick is correct will be displayed on the app. If correct, and the user wins—like any legal sports book—their Fliff Cash balance increases by the payout amount and if they lose the amount of Fliff Cash the user chooses to bet reduces their Fliff Cash balance by that same amount.

29. Fliff looks nearly identical to traditional sports betting apps. Football fans can browse NFL and NCAAF odds on the various games taking place each week. It also covers NBA and college basketball, NHL, MLB games and various international baseball leagues. More than a dozen soccer leagues are featured, including the Premier League and the Champions League. The user can also place bets on tennis tournaments, boxing, MMA and a few leading e-sports.

30. Sports bets, generally, include bets on the game's "moneyline," which means simply betting on one team to win over the other. A "point spread" bet is another alternative, which involves betting on a team winning or losing any game by a certain number of points, goals, runs, etc. Separately, an "over/under" bet involves wagering that the two teams' combined score will add up to more or less than a certain number of goals, points, runs, etc. Finally, a "parlay" bet involves

linking multiple bets together (e.g., moneyline, point spread, over/under), where the bettor must win each individual bet to get the payout.

31. An image of the Fliff gaming interface using Fliff Cash to bet on sporting events (in this instance an NBA game), with available moneyline, spread and over/under totals is pictured below. In this example, a spread bet of 1 Fliff Cash on the Philadelphia 76ers would yield a payout of 1.86 in Fliff Cash, consistent with the posted spread odds on this NBA game.



32. On the internet, Fliff is recognized as a sports book that California residents can use to place sports bets, while waiting for the state to legalize sports gambling. As the website California Casinos observed:

> For now, and probably until at least 2024, **Fliff is the only legal way to make sports picks for a chance to win money in California**. So we want to treat it as seriously as we'd treat any real-money sportsbook operating in the country's biggest state. You'd better believe Californians eager to

CLASS ACTION COMPLAINT        9

bet on sports but discouraged by the prospects of Prop 26 and Prop 27 this November are flocking to the App Store on Google Play Store to download the Fliff app. Starting this week, we'll post our six recommendations for the top Fliff football picks — three NFL, three college football. Fliff doesn't have season-long futures odds, so these weekly pieces will mostly focus on moneyline, spread, and Over/Under picks.[11]

33. But it's not just everyday sports gamblers who are aware of Fliff, underage users are also keenly aware that users can place sports bets using real money on Fliff.

34. As one Florida school district reported, "with the ever-expanding online platform, many iPhone applications and websites have made sports betting accessible to teenagers."[12] One student featured in the article stated, "[m]y main platform is an app called Fliff, which has most of your common bets and is strictly sports betting."[13] The article reported that "Fliff is in the regular rotation for many young betters for its easy-to-navigate platform [and that]…Fliff's [age verification] system is very poor and many underage kids are able to get away with withdrawing money."[14]

### D. Fliff Violates California Law

35. To evade oversight, Fliff claims that it is a "sweepstakes." But California law defines a "sweepstakes" as "any procedure for the distribution of anything of value by lot or by chance that is not unlawful under other provisions

---

[11] https://www.californiacasinos.com/news/fliff-sports-betting-nfl-college-football-picks-dolphins-nc-state/

[12] *See* "Underage Sports Betting Takes Hold of PVHS" December 9, 2021 (available at https://pvhstiburon.com/index.php/2021/12/09/underage-sports-betting-takes-hold-of-pvhs/) (last visited January 19, 2023).

[13] *Id*.

[14] *Id*.

CLASS ACTION COMPLAINT      10

of the law including, but not limited to, the provisions of section 320 of the Penal Code." Cal. Bus. & Prof. Code § 17539.5 (a)(12).

36. First, there is nothing about Fliff that satisfies the definition of "sweepstakes." Fliff describes the odds of winning as varying "for each Game and will be published by [Fliff] on the platform" and that the player "will choose the Game and will Stake Fliff Cash, and their win expectancy [odds of winning a Prize] will be a function of these choices."

37. In other words, just like in any traditional sports book, the user picks the sporting event to bet on based on the published odds of a particular team winning (or the spread, moneyline, or over/under totals). The user then places a bet with Fliff Cash and winning or losing is a function of the outcome of the sporting event and the user's choices, i.e., whether they picked the right team or the right odds for that sporting event. There is no distribution of a thing of value "by lot or chance." Cal. Bus. & Prof. Code § 17539.5 (a)(12).

38. Second, the California Penal Code, section 330.2, defines "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value." Fliff Cash is a credit that can be converted into actual money.

39. In addition, Section 337a, makes any "bookmaking" illegal. The Penal Code specifies that bets or wagers on the result of contests of skill, speed, or power of persons or between persons (i.e., sporting events) are illegal. The Penal Code includes as punishable offenses:

> (1) Pool selling or bookmaking, with or without a writing, at any time or place.
>
> * * *
>
> (4) Whether for gain, hire, reward, or gratuitously, or otherwise, at any time or place, records, or registers any bet or bets, wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or

CLASS ACTION COMPLAINT    11

> *purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever.*
>
> * * *
>
> (6) Lays, makes, offers, or accepts any bet or bets, or wager or wagers, upon the result, or purported result, of any trial, or purported trial, or *contest, or purported contest, of skill, speed, or power of endurance of person or animal, or between persons, animals, or mechanical apparatus*.

Cal. Penal. Code § 337a (1), (4), (6) (emphasis added).

### E. Fliff Violates the Federal Wire Act, 18 U.S.C. § 1084

40. The Interstate Wire Act ("Wire Act") is a federal criminal statute that makes it illegal to pass gambling information and instructions across state lines using electronic wires.

41. Specifically, the relevant text of the law is as follows:

> Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce *of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers*, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1084 (a) (emphasis added).

42. In sum, the Wire Act makes it illegal to: (i.) use a wire communication facility to host a betting service or act as a tout for sports betting; (ii.) use a wire communication transmission (phone, internet) to place a bet or give a tip about a

CLASS ACTION COMPLAINT      12

betting opportunity; and (iii.) to facilitate the payment for bets or wagers and/or payout of successful bets or wagers.

43. Fliff is based in Pennsylvania, Plaintiff and the putative Class are based in California. Fliff uses the internet to transmit through interstate commerce bets or wagers on sporting events and contests, which "entitles the recipient to receive money or credit as a result of the bets or wagers…" *Id*. Fliff's conduct violates the Wire Act.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings his claims as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are met with respect to the Class defined below.

45. Plaintiff proposes a Class defined as follows:

> All persons in the State of California who purchased Fliff Cash on the Fliff Sportsbook App.

46. Excluded from the Class is Defendant Fliff and any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such person's immediate families, the presiding judge(s) in this case and his/her immediate family.

47. <u>Numerosity</u>: Plaintiff believes, and therefore avers, that Fliff has been used in California by thousands of residents. Accordingly, the Class consist of hundreds, if not thousands of persons, making individual joinder of all the Class members impracticable. The Class can be readily identified using Fliff's registration data.

48. <u>Commonality and Predominance</u>: Questions of law and fact are common to the Plaintiff, and the Class, and they predominate over questions affecting only individual members. Common questions include:

　　　　(a)　Whether Fliff is an illegal sports book under California law;

1         (b)        Whether Fliff violates the Federal Wire Act;

2         (c)        Whether Fliff was unjustly enriched by operating an illegal sports book in California;

        (d)        Whether Fliff Cash is a thing of value under California law;

        (e)        Whether Fliff should be enjoined from selling Fliff Cash; and

        (f)        Whether the Plaintiff and the Class are entitled to rescission and restitution.

49. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class described above, and they arise from the same course of conduct by Fliff. The relief the Plaintiff seeks is typical of the relief sought for the absent Class members.

50. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of all absent Class members. Plaintiff is represented by counsel competent and experienced in class action litigation.

51. <u>Superiority:</u> A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

52. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Fliff. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

53. <u>Policies Generally Applicable to the Class</u>: Fliff actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies on behalf of a Class of similarly situated individuals.

CLASS ACTION COMPLAINT      14

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Violation of California Unfair Competition Law
### (Cal Bus & Prof Code § 17200 *et seq.*)
### On Behalf of the Class

54. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

55. Plaintiff brings this cause of action on behalf of himself and on behalf of the other Class members, against Fliff for its unlawful, unfair, and/or deceptive business acts and practices pursuant to California's Unfair Competition Law (UCL), Business & Professions Code § 17200 *et seq.*, which prohibits unlawful, unfair and/or fraudulent business acts and/or practices.

56. This claim is predicated on the duty to refrain from unlawful, unfair and deceptive business practices. Plaintiff and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.

57. The UCL prohibits acts of "unfair competition." As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices"; (b) "unfair fraudulent business acts or practices"; and (c) "unfair, deceptive or misleading advertising."

58. Fliff committed *unlawful* business acts or practices in violation of the UCL.

59. Fliff also committed *unfair* business acts or practices in violation of the UCL.

60. Fliff, operates an illegal sports book, which violates the California Penal Code, section 337a (1), (4), and (6). In addition, by transmitting sports bets or wagers in interstate commerce, Fliff has violated the Federal Wire Act, 18 U.S.C. § 1084 (a).

CLASS ACTION COMPLAINT     15

61. As a result of Fliff's violation of the UCL, Plaintiff and the Class have suffered injury-in-fact and lost money or property in the amounts paid for Fliff Cash.

62. Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Fliff and demands declaratory, equitable, and/or injunctive relief, including recission and restitution, as well as requiring Fliff to stop its unlawful conduct and prohibit Fliff from continuing to sell Fliff Cash for use in online sports gambling.

## SECOND CAUSE OF ACTION
### Unjust Enrichment
### On Behalf of the Class

63. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

64. Plaintiff and the Class have conferred a benefit upon Fliff in the form of money paid for Fliff Cash for use in an illegal online sports book.

65. Fliff appreciates and/or has knowledge of the benefits conferred on it by Plaintiff and the putative Class.

66. Under principles of equity and good conscience, Fliff should not be permitted to retain the money obtained from Plaintiff and the putative Class, which Fliff has unjustly obtained as a result of their unlawful conduct in violation of both state and federal law. Fliff should not be permitted to retain the ill-gotten gains they have received through the sale of Fliff Cash.

67. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money the Fliff received as a result of the unlawful and/or wrongful conduct alleged herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Fliff and in their favor, and grant the following relief:

A. Determine that this action may be maintained as a Class action with respect to the Class identified herein; certify a class action pursuant to both Rule 23(b)(2) and (3) with respect to particular issues if appropriate; and designate and appoint the named Plaintiff herein and their counsel to serve as Class Representatives and Class Counsel;

B. Declaring that Fliff is an illegal sports book that operates in violation of both state and federal law;

C. Grant Plaintiff and the Class declaratory, equitable, and/or injunctive relief, including recission;

D. Awarding restitution to Plaintiff and the Class in an amount to be determined and requiring disgorgement of all benefits that Fliff unjustly received;

E. Enjoining Fliff from continuing the challenged conduct;

F. Grant Plaintiff and the Class members their costs of suit, including reasonable attorneys' fees and expenses, as provided by law;

G. Awarding pre- and post-judgment interest, to the extent allowed by law;

H. Appoint a receiver to restore the Plaintiff and members of the Class, as persons in interest, of money that Fliff acquired by its aforementioned unfair competition; and

I. Grant Plaintiff and the members of the Class such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

# JURY TRIAL DEMAND

Plaintiff, by his counsel, request a trial by jury on those causes of actions set forth herein.

Respectfully submitted,

Date: June 6, 2023         By: */s/Dennis Stewart*
                              Dennis Stewart
                              **GUSTAFSON GLUEK PLLC**
                              CA Bar No. 99152
                              600 W. Broadway, Suite 3300
                              San Diego, CA 92021
                              Tel: (619) 595-3299
                              dstewart@gustafsongluek.com

                              Daniel E. Gustafson
                              Abou B. Amara, Jr.
                              **GUSTAFSON GLUEK PLLC**
                              120 South Sixth Street, Suite 2600
                              Minneapolis, MN 55402
                              Tel: (612) 333-8844
                              Fax: (612) 339-6622
                              dgustafson@gustafsongluek.com
                              aamara@gustafsongluek.com

                              Simon Bahne Paris
                              Patrick Howard
                              **SALTZ, MONGELUZZI,**
                              **& BENDESKY, P.C.**
                              One Liberty Place, 52nd Floor
                              1650 Market Street
                              Philadelphia, PA 19103
                              Tel: (215) 575-3986
                              sparis@smbb.com
                              phoward@smbb.com

                              *Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT       18