Sunita Bali, Bar No. 274108
sbali@perkinscoie.com
Elliott J. Joh, Bar No. 264927
ejoh@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Tel: 415.344.7000
Fax: 415.344.7050

William M. Gantz (pro hac vice)
BGantz@duanemorris.com
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: (857) 488-4234
Facsimile: (857) 401-3026

[additional attorneys listed below signature]
Attorneys for Defendant
FLIFF, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BISHOY NESSIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLIFF, INC.,<br><br>Defendant. | Case No. 5:23-CV-1048-SSS (SHKx)<br><br>**DEFENDANT FLIFF, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>Date: September 1, 2023<br>Time: 2:00 p.m.<br>Ctrm: 2, 2nd Floor<br>Judge: Hon. Sunshine S. Sykes |

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Fliff's Services to Its Users ..... 1

B. All Users Must Accept Fliff's Terms of Use and Sweepstakes Rules ..... 3

III. LEGAL STANDARDS ..... 6

IV. ARGUMENT ..... 8

A. Pennsylvania Law Governs Fliff's Terms of Use and Sweepstakes Rules, Including the Mandatory Arbitration Provision. ..... 8

B. Fliff's Arbitration Provision is Valid and Enforceable ..... 9

C. The Arbitration Provision Encompasses Plaintiff's Claims. ..... 10

D. Plaintiff is Required to Arbitrate his Claims on an Individual Basis ..... 11

E. The Court Should Dismiss the Complaint Pending Arbitration. ..... 12

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ..... 12

*Am. Exp. Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013) ..... 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ..... 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ..... 7, 10

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ..... 12

*Coneff v. AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012) ..... 7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ..... 8

*Dobbs v. Health IQ Ins. Servs.*,
2022 WL 2974713 (E.D. Pa. July 27, 2022) ..... 10

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ..... 7, 12

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) ..... 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ..... 6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ..... 7

*HealthplanCRM, LLC v. AvMed, Inc.*,
458 F.Supp.3d 308 (W.D. Pa. 2020) ..... 10

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014) ..... 12

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
581 U.S. 246 (2017) ..... 6

*Lee v. Ticketmaster L.L.C.*,
817 Fed.App'x. 393 (9th Cir. 2020) ..... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) ........ 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 11

*Mortensen v. Bresnan Commc'ns, LLC*,
722 F.3d 1151 (9th Cir. 2013) ........ 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 8

*Nedlloyd Lines B.V. v. Superior Ct.*,
3 Cal. 4th 459 (1992) ........ 9

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 8

*Nguyen v. Dental Sleep Masters, LLC*,
2018 WL 6265058 (C.D. Cal. Apr. 30, 2018) ........ 9

*Peters v. Amazon Servs. LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd,* 669 F. App'x 487 (9th Cir. 2016) ........ 7

*Pricharda v. Checkr*, Inc.,
2022 WL 16749033 (E.D. Pa., Nov. 7, 2022) ........ 9

*Prof'l Collection Consultants v. Lauron*,
8 Cal. App. 5th 958 (2017) ........ 9

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ........ 7

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........ 11

*Sparling v. Hoffman Constr. Co., Inc.*,
864 F.2d 635 (9th Cir. 1988) ........ 12

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ........ 8

*U.S. v. Clayton*,
108 F.3d 1114 (9th Cir. 1997) ........ 12

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
46 F. App'x 412 (9th Cir. 2002) ........ 10

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Zabokritsky v. JetSmarter, Inc.*,
2019 WL 2563738 (E.D. Pa. 2019) .......... 10

**STATUTES**

9 U.S.C. § 2 .......... passim

9 U.S.C. § 3 .......... 6

9 U.S.C. § 4 .......... 7, 11

**OTHER AUTHORITIES**

Restatement (Second) of Conflicts of Laws § 187 .......... 8, 9

Restatement (Second) of Conflicts of Laws § 188 .......... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Bishoy Nessim has filed claims against Fliff, Inc. ("Fliff") that are subject to arbitration on an individual basis and therefore do not belong in federal court.

When Nessim registered to use Fliff's services, he agreed to Terms of Use and Sweepstakes Rules requiring "any and all disputes and causes of action arising out of or connected with" those services to be arbitrated. Both of Nessim's claims concern his alleged purchase and use of Fliff Cash in sweepstakes games on the Fliff application, and thus they fall well within the scope of claims that the parties expressly agreed must be arbitrated. Nessim conspicuously avoids referencing this mandatory arbitration provision (or indeed, any of Fliff's Terms of Use or Sweepstakes Rules) in the Complaint for good reason – it operates as a total bar to the claims he attempts to assert in this Court.

Accordingly, Fliff's motion to compel arbitration should be granted, and the Complaint and all claims asserted therein should be dismissed.

## II. BACKGROUND

### A. Fliff's Services to Its Users

Fliff is a gaming application available for free download on both Android and Apple devices. Compl. ¶ 18. Plaintiff alleges that Fliff is capitalizing on the "free play" business model, referencing Fliff's Apple App store posting that "Fliff is the free-to-play game that never ends! [Fliff] Coins and Fliff Cash are always available to be claimed if you run out so you can always get in on the action." *Id.* ¶ 19.

Plaintiff acknowledges that Fliff "gives away Fliff Coins freely" to users, and that Fliff Coins may be used to "bet" on sporting events but offer nothing of real value. *Id.* ¶ 20. This allegation is consistent with the applicable Fliff Terms of Use. *See* Declaration of Matt Ricci ("Ricci Decl."), Ex. A (Fliff Terms of Use), p. 1

("Fliff Coin means the virtual social gaming currency which enables you to play the Fliff Coin Games. Fliff Coins have no monetary value and ***cannot under any circumstance be exchanged for cash or prizes of monetary value***.") (emphasis added).

Plaintiff further alleges that Fliff Coins give the opportunity to earn XP (the app's reward program points), move up leaderboards, and earn badges. *Id*. Plaintiff also alleges that while no purchase is necessary, and the user can obtain free Fliff Coins every 2 hours, there is, however, also an option for the user to purchase Fliff Coins, and, when purchased, the user often will be given additional Fliff Cash as a bonus for purchasing the coins. *Id*.

According to Plaintiff, Fliff Cash is provided, in certain circumstances, for free as a bonus for purchasing certain Fliff Coin packs. *Id*. ¶ 22. Plaintiff alleges that users can also write to Fliff to request 5.00 in free Fliff Cash if the user has less than 5.00 in Fliff Cash at the time of the request. *Id*. These allegations are consistent with the applicable Terms of Use:

> Fliff Cash means sweepstakes entries subject to the Sweepstakes Rules. We may give you Fliff Cash free of charge when you sign up to the Platform, as a bonus when you purchase Fliff Coins or via free alternative methods of entry as set out in the Sweepstakes Rules. You may win more Fliff Cash when you play Sweepstakes Games. YOU CANNOT PURCHASE Fliff Cash.

Ricci Decl., Ex. A, p. 1.

Notwithstanding Plaintiff's acknowledgment that Fliff Cash is provided as a bonus for free, or like any sweepstakes, via a free entry method, Nessim also concludes and alleges that he made a number of wagers on sports using Fliff Cash he purchased on the app using a Mastercard, losing between $7,000–$8,000. Compl. ¶ 7; *see also id.* ¶ 25 (alleging that Fliff users may purchase Fliff Cash from the Fliff cashier inside the application and use it to bet on real sporting events); ¶ 26

(alleging that Fliff users can switch from purchasing Fliff Coins to Fliff Cash); ¶ 27 (alleging that Fliff users can use Apple Pay, Visa, or Mastercard to purchase Fliff Cash in amounts ranging from $1 to $100, and that the amount of Fliff Cash purchased is a dollar-for-dollar equivalent to actual cash).[1] Plaintiff alleges that the "real thrust" of Fliff is the ability of users to wager using Fliff Cash, and he proposes a class of "all persons in the State of California who purchased Fliff Cash on the Fliff Sportsbook App." *Id.* ¶¶ 22, 45.

### B. All Users Must Accept Fliff's Terms of Use and Sweepstakes Rules

In order to use Fliff's application and services, a person is required by the programming and operation of the Fliff application to first create a user account on Fliff's application. Ricci Decl., ¶ 4. As part of the account creation and registration process, the person is required to accept and agree to Fliff's Terms of Use and Sweepstakes Rules, which is accomplished by navigating to Fliff's account creation page and clicking a checkbox next to the statement: "I accept the Terms of Use and Sweepstakes Rules of Fliff Inc." *Id.* ¶ 5. A person cannot access Fliff's application, make any purchases on the application, or otherwise use any of Fliff's services unless the person first confirms acceptance of the Fliff Terms of Use and Sweepstakes Rules in accordance with this process. *Id.* ¶ 6.

As shown in the screenshot of Fliff's account creation page below, "Terms of Use" and "Sweepstakes Rules" appear in blue font and are hyperlinked to the respective documents:

[1] To be clear, as indicated by the applicable Terms of Use and Sweepstakes Rules, Fliff Cash is never sold. While the dispute over Plaintiff's participation in the Fliff sweepstakes games using Fliff Cash need not be resolved to decide this motion, this core defect in Plaintiff's claim should be resolved in an individual arbitration as required by the Sweepstakes Rules to which the Plaintiff agreed.




Ricci Decl., ¶ 5; Ex. C (Fliff Account Creation Page).

Section 13 of the Sweepstakes Rules provides, in relevant part:

> 13.1. Except where prohibited by law, as a condition of participating in this Sweepstakes, each Participant agrees that:
>
> 13.1. (a) any and all disputes and causes of action arising out of or connected with this Sweepstakes, including but not limited to prizes awarded, shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association and held at the AAA regional office nearest the Participant (or for Canadian residents the International Centre for Dispute Resolution);
>
> 13.1. (b) the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings at such arbitration; and
>
> 13.1. (c) judgment upon such arbitration award may be entered in any court having jurisdiction.
>
> 13.2. Under no circumstances will any Participant be permitted to obtain awards for, and Participant hereby waives all rights to claim, punitive, incidental or consequential damages, or any other damages, including attorneys' fees, other than Participant's actual out-of-pocket expenses (i.e., costs associated with participating in this Sweepstakes), and Participant further waives all rights to have damages multiplied or increased. SOME JURISDICTIONS DO NOT ALLOW THE LIMITATIONS OR EXCLUSION OF LIABILITY FOR

> INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE MAY NOT APPLY TO YOU.
>
> 13.3. All issues and questions concerning the construction, validity, interpretation and enforceability of these Sweepstakes Rules, or the rights and obligations of the Participant and Sponsor/Promoter in connection with the Sweepstakes, shall be governed by, and construed in accordance with, the laws of the State of Pennsylvania, without giving effect to any choice of law or conflict of law rules (whether of the State of Pennsylvania or any other jurisdiction), which would cause the application of the laws of any jurisdiction other than the State of Pennsylvania.

Ricci Decl., Ex. B.

Plaintiff created a Fliff account on December 26, 2022. Ricci Decl., ¶ 3. In order to do so, Plaintiff navigated to Fliff's account creation page and clicked a checkbox next to the statement: "I accept the Terms of Use and Sweepstakes Rules of Fliff Inc." *Id.* ¶ 7.

## III. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") establishes that arbitration agreements "shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

Pursuant to the FAA, arbitration agreements must be strictly enforced when there is a valid arbitration agreement and the dispute falls within its scope. 9 U.S.C. § 3; *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 254-55 (2017). The FAA mandates that courts "shall make an order directing the parties to

proceed to arbitration *in accordance with the terms of the agreement*." 9 U.S.C. § 4 (emphasis added); *see also Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) ("[C]ourts must rigorously enforce arbitration agreements" according to their terms."). The U.S. Supreme Court has further instructed that courts must enforce arbitration agreements "including terms providing for individualized arbitration proceedings." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

The Ninth Circuit routinely enforces arbitration agreements. *See, e.g., Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159-60 (9th Cir. 2013); *Ferguson v. Corinthian Colleges, Inc*., 733 F.3d 928, 937-38 (9th Cir. 2013); *Coneff v. AT&T Corp.,* 673 F.3d 1155, 1160-61 (9th Cir. 2012). "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability[.]" *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986). Given the presumption in favor of arbitrability, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id*. (citation omitted); *see also Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash. 2013) (noting "there is a presumption of arbitrability" where a contract contains an arbitration clause and instructing that "the most minimal indication of the parties' intent to arbitrate must be given full effect" (citation & internal quotation marks omitted)); *aff'd,* 669 F. App'x 487 (9th Cir. 2016).

Under the FAA, a court's role is limited to making two inquiries in deciding whether to enforce an arbitration agreement: (1) does a valid agreement to arbitrate exist and, if so, (2) does the current dispute fall within the scope of that agreement? *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000). The burden is on the party opposing arbitration to prove that arbitration is not required. *See Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are

unsuitable for arbitration.”). Where, an arbitration provision satisfies these conditions, the FAA “leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration[.]” *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Courts must resolve “any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.” *Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983); *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

## IV. ARGUMENT

### A. Pennsylvania Law Governs Fliff’s Terms of Use and Sweepstakes Rules, Including the Mandatory Arbitration Provision.

Fliff’s Terms of Use and Sweepstakes Rules – including the mandatory arbitration provision contained therein — are governed by Pennsylvania law “without giving effect to any choice of law or conflict of law rules (whether of the State of Pennsylvania or any other jurisdiction), which would cause the application of the laws of any jurisdiction other than the State of Pennsylvania.” Ricci Decl., Ex. A, ¶ 16.14; Ex. B, ¶ 13.3. Thus, under California’s choice-of-law rules, the Court must look to Pennsylvania law in determining whether the arbitration provision is valid and enforceable. *See Lee v. Ticketmaster L.L.C.*, 817 Fed.App’x. 393, 394 (9th Cir. 2020) (citing *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175 (9th Cir. 2014)) (to determine whether parties have entered into a valid agreement to arbitrate, “federal courts apply ordinary state-law principles that govern the formation of contracts”).

“A federal court sitting in diversity must look to the forum state’s choice of law rules to determine the controlling substantive law.” *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 589 (9th Cir. 2012). When “determining the enforceability of arm’s-length contractual choice-of-law provisions,” California

courts "apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 464–65 (1992). Under § 187, a choice-of-law provision is enforceable unless one of two exceptions apply: (1) "the chosen state has no substantial relationship to the parties or the transaction"; or (2) "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflicts of Laws § 187. Under California law, the chosen state has a "substantial relationship to the parties ... where one of the parties is domiciled or has his principal place of business in that state." *Prof'l Collection Consultants v. Lauron*, 8 Cal. App. 5th 958, 973 (2017).

Here, because Fliff is alleged to have its principal place of business in Pennsylvania (Compl. ¶ 8), the Court should enforce the Pennsylvania choice-of-law provision in Fliff's Terms of Use and Sweepstakes Rules unless Plaintiff can demonstrate that California has a materially greater interest in the dispute than Pennsylvania. *See Nguyen v. Dental Sleep Masters, LLC*, 2018 WL 6265058, at *5 (C.D. Cal. Apr. 30, 2018). Plaintiff cannot do so.

**B. Fliff's Arbitration Provision is Valid and Enforceable.**

Under Pennsylvania law, Plaintiff expressly agreed to Fliff's Terms of Use and Sweepstakes Rules, and the Court should thus enforce the arbitration provision contained therein.

As discussed in Section II.B *supra*, Plaintiff was required to check a box on Fliff's account creation page indicating that he "accept[s] the Terms of Use and Sweepstakes Rules of Fliff Inc" before he could begin using Fliff's services. Pennsylvania courts regularly find that these kinds of "clickwrap" agreements "manifest sufficient agreement to the terms in the contract." *Pricharda v. Checkr*,

Inc., 2022 WL 16749033, at *1 (E.D. Pa., Nov. 7, 2022) (finding that Plaintiff consented to the Terms of Service which included an arbitration provision "by clicking a box which read, "By checking this box, I agree to Checkr's Terms of Service." ); *Dobbs v. Health IQ Ins. Servs*., 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022) (finding that plaintiff consented to an arbitration agreement by clicking submit when the following relevant language appeared immediately below the submit button: "By clicking 'SUBMIT', you agree to our Privacy Policy and Terms of Use"); *Zabokritsky v. JetSmarter, Inc.*, 2019 WL 2563738, at *3-4 (E.D. Pa. 2019) (finding plaintiff consented to the arbitration provision by sliding a button next to the text that said she "agree[d] to the Terms of Use and Privacy Policy"); *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F.Supp.3d 308, 334 (W.D. Pa. 2020) ("Clickwrap agreements are routinely enforced by the courts.").

Accordingly, the Court should find that the parties have entered into a valid agreement to arbitrate their dispute.

### C. The Arbitration Provision Encompasses Plaintiff's Claims.

Fliff's Sweepstakes Rules unambiguously require the parties to arbitrate disputes related to the sweepstakes: "any and all disputes and causes of action arising out of or connected with this Sweepstakes, including but not limited to prizes awarded, shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association[.]" Ricci Decl., Ex. B, ¶ 13.1(a). This "any dispute" language is far in scope and inclusive in meaning. *Chiron*, 207 F.3d at 1131 (recognizing that arbitration agreements covering "[a]ny dispute, controversy, or claim" reach "broad and far" in scope); s*ee also United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 413 (9th Cir. 2002) (noting that "the phrase 'relating to'" in an arbitration agreement "has a broad and inclusive meaning").

Broad arbitration language of this nature "reaches every dispute between the

parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720–21 (9th Cir. 1999) (collecting cases broadly construing similar arbitration agreements). To require arbitration, Plaintiff's factual allegations need only "touch matters" covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985).

Plaintiff expressly alleges that his claims concern Fliff's Sweepstakes and Fliff Cash (which function as sweepstakes entries). Compl. ¶¶ 2, 4, 18-43, 54-67. Specifically, Plaintiff alleges that "Fliff violates the California Unfair Competition Law by operating an illegal online sports book" and "Fliff has also been unjustly enriched as a result of its unlawful conduct." *Id*. ¶ 4. Plaintiff further alleges that Fliff evades oversight by claiming that its sports book is a "'sweepstakes," when in fact "nothing about Fliff [ ] satisfies the definition of 'sweepstakes.'" *Id*. at ¶¶ 2, 35-36. As a result, Plaintiff claims he "suffered injury-in-fact and lost money or property in the amounts paid for Fliff Cash," and "Fliff should not be permitted to retain the ill-gotten gains they have received through the sale of Fliff Cash," and is thus entitled to remedies under the UCL and common law unjust enrichment. *Id*. ¶¶ 61, 66. These claims and allegations squarely pertain to Fliff's Sweepstakes and Fliff Cash. As such, Plaintiff's claims are unambiguously within the scope of the mandatory arbitration provision in Fliff's Sweepstakes Rules.

### D. Plaintiff is Required to Arbitrate his Claims on an Individual Basis.

In compelling this matter to arbitration, the Court should also enforce the class action waiver contained within the Sweepstakes Rules and order that arbitration may proceed only on an individual basis, in accordance with the FAA. *See* 9 U.S.C. § 4 (mandating that courts "shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*") (emphasis

added).

As an initial matter, the FAA governs arbitration of Plaintiff's claims for two reasons. First, the Sweepstakes Rules specify that the FAA shall govern "interpretation, enforcement and all proceedings at such arbitration." Ricci Decl., Ex. B, ¶ 13.1(b). Second, Fliff's services are plainly "within the flow of interstate commerce," and are thus subject to the FAA. *See Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995)); *id*. at 56–57 (explaining that the FAA "provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause" and Congress's Commerce Clause power extends to "economic activity" that "in the aggregate . . . would represent a general practice subject to federal control"); *see also U.S. v. Clayton*, 108 F.3d 1114, 1117-1118 (9th Cir. 1997).

Here, the Sweepstakes Rules expressly require that disputes "shall be resolved individually, without resort to any form of class action." Ricci Decl., Ex. B, ¶ 13.1(a). Thus, the Court should honor the parties' agreement and order that arbitration of Plaintiff's claims may only proceed on an individual basis. *See Epic Systems*, 138 S. Ct. at 1619 (courts must enforce arbitration agreements "including terms providing for individualized arbitration proceedings").

### E. The Court Should Dismiss the Complaint Pending Arbitration.

In the Ninth Circuit, a district court has discretion to dismiss a party's complaint where the court finds that the arbitration clause covers all of the party's claims. *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc*., 755 F.3d 1072, 1073-1074 (9th Cir. 2014) (affirming dismissal of action where "all of [the plaintiff's] claims fall within the scope of [the arbitration] agreement"); *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of action where "the arbitration clause was broad enough to bar all of the plaintiff's claims since it required [the plaintiff] to submit all claims to arbitration"). Because the arbitration provision in Fliff's Sweepstakes Rules encompasses all of Plaintiff's

claims, in addition to compelling this matter to arbitration on an individual basis, the Court should dismiss the Complaint and all claims asserted therein.

## CONCLUSION

For all of the foregoing reasons, the Court should compel this matter to arbitration on an individual basis and dismiss the Complaint.

The undersigned, counsel of record for Defendant Fliff, Inc., certifies that this brief contains 3504 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 2, 2023

**PERKINS COIE LLP**

By: *<u>/s/ Elliott J. Joh</u>*
Elliott J. Joh

Sunita Bali, (SBN 274108)
SBali@perkinscoie.com
Elliott J. Joh, Bar No. 264927
ejoh@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, CA 94105
Tel: 415.344.7000
Fax: 415.344.7050

William M. Gantz (pro hac vice application pending)
BGantz@duanemorris.com
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: (857) 488-4234
Facsimile: (857) 401-3026

Courtney L. Baird (SBN 234410)
CLBaird@duanemorris.com
Gina M. Foran (SBN 311005)
GMForan@duanemorris.com
DUANE MORRIS LLP

865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7400
Fascimile: (213) 689-7401

Attorneys for Defendant
FLIFF, INC.