**(STAY / JS-6 Admin)**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BISHOY NESSIM,<br><br>           Plaintiff,<br><br>      v.<br><br>FLIFF, INC., et al.<br><br>           Defendant. | Case No. 5:23-cv-01048-SSS-SHKx<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [DKT. 36]** |

Before the Court is Defendant Fliff, Inc.'s ("Fliff") Motion to Compel Arbitration (the "Motion") filed on August 2, 2023. [Dkt. 36]. On September 1, 2023, Plaintiff Bishoy Nessim ("Nessim") filed his opposition (the "Opposition") to Fliff's Motion. [Dkt. 39]. On September 15, 2023, Fliff filed its reply (the "Reply") to Nessim's Opposition. [Dkt. 40]. In its Reply, Fliff argued for the first time the Parties agreed to arbitrate arbitrability because Fliff's Sweepstakes Rules incorporated by reference the rules of the American Arbitration Association (the "AAA Rules"). [Dkt. 40 at 2]. In response to this new argument, the Court ordered Nessim to respond to the Reply, and Nessim filed his response on October 19, 2023. [Dkt. 48; 47].

This matter is now fully briefed and ripe for review. Having reviewed the Parties' arguments, the relevant legal authority, and the record in this case, the Motion is hereby **GRANTED**..

## I. BACKGROUND

On June 6, 2023, Nessim filed this putative class action against Fliff alleging a violation of California's Unfair Competition Law (the "UCL") and an unjust enrichment claim. [Dkt. 1 at 15–16]. Nessim argues that, under California law, Fliff operates an illegal "unregulated online sports book," and that Fliff's conduct in running its service constitutes unlawful and unfair business acts under the UCL. *Id*. at 5–15. Fliff is a gaming application available for free download on both Apple and Android Devices. [Dkt. 36-1 at 6]. On August 11, 2023, Fliff filed the pending Motion based on the alleged arbitration agreement within Fliff's Sweepstakes Rules. *Id*. at 10.

In relevant part, Fliff's Sweepstakes Rules provide:

"13.1. Except where prohibited by law, as a condition of participating in this Sweepstakes, each Participant agrees that:

13.1. (a) any and all disputes and causes of action arising out of or connected with this Sweepstakes, including but not limited to prizes awarded, shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association and held at the AAA regional office nearest the Participant (or for Canadian residents the International Centre for Dispute Resolution);

13.1. (b) the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings at such arbitration; and

13.1. (c) judgment upon such arbitration award may be entered in any court having jurisdiction.

13.2. Under no circumstances will any Participant be permitted to obtain awards for, and Participant hereby waives all rights to claim, punitive, incidental or consequential damages, or any other damages,

including attorneys' fees, other than Participant's actual out-ofpocket expenses (i.e., costs associated with participating in this Sweepstakes), and Participant further waives all rights to have damages multiplied or increased. SOME JURISDICTIONS DO NOT ALLOW THE LIMITATIONS OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE MAY NOT APPLY TO YOU.

13.3. All issues and questions concerning the construction, validity, interpretation and enforceability of these Sweepstakes Rules, or the rights and obligations of the Participant and Sponsor/Promoter in connection with the Sweepstakes, shall be governed by, and construed in accordance with, the laws of the State of Pennsylvania, without giving effect to any choice of law or conflict of law rules (whether of the State of Pennsylvania or any other jurisdiction), which would cause the application of the laws of any jurisdiction other than the State of Pennsylvania." [Dkt. 36-1 at 10–11]."

As way of background, Nessim created a Fliff account on December 26, 2022. *Id*. at 11. To create the account, Nessim navigated Fliff's account creation page and clicked a checkbox "next to the statement: 'I accept the Terms of Use and Sweepstakes Rules of Fliff Inc.'" *Id*. In his Opposition, Nessim does not challenge than an agreement between the Parties was made as described above. [Dkt. 39]. Rather, Nessim contends the agreement is unenforceable because (1) it violates California's *McGill* Rule, and (2) the agreement is unconscionable such that it is not enforceable. [Dkt. 39 at 7].

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, allows a party to a written arbitration agreement to petition a United States District Court for an order compelling the parties to arbitrate. Under the FAA, the role of the district court is to determine (1) whether the agreement encompasses the dispute at issue, and if so (2) whether the agreement is valid. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014) (citing *Kilgore v. KeyBank, N.A.*, 718 F.3d

1052, 1057-58 (9th Cir. 2013) (en banc)). "If the court answers both questions in the affirmative, it must 'enforce the arbitration agreement in accordance with its terms.'" *Roma Mikha, Inc. v. S. Glazer's Wine & Spirits, LLC*, No.: 8:22-cv-01187-FWS-ADS, 2023 WL 3150076, at *4 (C.D Cal. Mar. 30, 2023) (quoting *Johnson v. Walmart, Inc.*, 57 F.4th 677, 680-81 (9th Cir. 2023)).

While Federal substantive law governs questions concerning the interpretation and enforceability of arbitration agreements, ordinary state law contract principles are applied when determining whether the parties agreed to arbitrate. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22–24 (1983); *Ozeran v. BMW of N. Am., LLC*, No. 21-cv-9926-DMG (RAOx), 2022 WL 3696619, at *2 (C.D. Cal. July 15, 2022). "If an arbitration clause is not itself invalid under 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' it must be enforced according to its terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011).

### III.  DISCUSSION

Fliff argues (1) Pennsylvania law governs Fliff's Sweepstakes Rules, (2) Fliff's arbitration agreement is valid and enforceable, (3) Nessim's Complaint falls within the scope of the arbitration provision, and (4) the Parties agreed to arbitrate arbitrability. [Dkt. 36-1 at 13–19; Dkt. 39 at 7]. Having read and considered these arguments and their opposition, the Court **GRANTS** Fliff's Motion in accordance with the opinion below.

#### A.  Choice of Law Provision

As an initial matter, the Court must determine which states' laws are applicable to Fliff's "Sweepstakes Rules." Fliff contends Pennsylvania law controls here because Fliff "is alleged to have its principal place of business in Pennsylvania," and Nessim cannot demonstrate California has a materially greater interest in this dispute. [Dkt. 36-1 at 14]. Nessim contends California law should apply because Fliff lacks a substantial relationship with

Pennsylvania and applying Pennsylvania law in this case would be contrary to a fundamental California policy. [Dkt. 39 at 15–19].

As the Parties correctly note, "[a] federal court sitting in diversity applies the forum state's choice of law rules." *Bridge Fund Capital Corp v. Fastbucks Franchise Corp*, 622 F.3d 996, 1002 (9th Cir. 2010). Here, Nessim alleged jurisdiction was proper under the Class Action Fairness Action ("CAFA"). [Dkt. 1 at 3]. Because CAFA is a diversity statute, the Court is sitting in diversity within the state of California, and thus the Court applies California's choice of law rules to determine if Fliff's choice of law provision is enforceable. *See Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1072 (N.D. Cal. 2020).

"California courts apply the principles set forth in the Restatement (Second) of Conflict of Laws § 187 to determine the law governing a contract with a choice-of-law provision." *KST Data, Inc. v. DXC Tech. Comp.*, 836 Fed. Appx. 484, 486 (9th Cir. 2020) (citing *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1152 (1992)). "Under the Restatement approach, the court must first determine 'whether the chosen state has a substantial relationship with the parties of their transaction, … or whether there is any other reasonable basis for the parties' choice." *Bridge Fund Capital Corp*, 622 F.3d at 1002 (citation omitted). If either test above is met, courts must then determine if the chosen state's law is "contrary to a *fundamental* policy of California." *Nedlloyd*, 834 P.2d at 1152. If a court finds such a conflict, "it must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Id*. If California possesses a materially greater interest, the choice of law will not be enforced. *Id*.

     **1. Substantial Relationship Under Section 187**

Here, the Parties do have a substantial relationship with Pennsylvania. Under California law, a state has a substantial relationship to the parties if one

of the parties is domiciled in or has their principal place of business within the chosen state. *See Prof'l Collection Consultants v. Lauron*, 214 Cal. Rptr. 3d. 419, 431 (Cal. Ct. App. 2017); *See Peleg v. Neiman Marcus Grp.*, 140 Cal. Rptr. 3d 38, 54 (Cal. Ct. App. 2012) (finding a company's principal place of business being within Texas sufficient to justify application of a Texas choice of law provision).

In this case, Fliff provided sufficient evidence, the second declaration of Matt Ricci, to establish that on December 26, 2022, the time of contract formation, Fliff's principal place of business was Pennsylvania. [Dkt. 40-2 at 3–4]; *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Courts routinely find such declarations sufficient to establish a corporate entity's principal place of business. *See e.g.*, *McDonald v. Gen. Motors, LLC*, 23-cv-01584-CJC (DFMx), 2023 WL 7019171, at *2 (C.D. Cal. Oct. 25, 2023) (finding a defendant sufficiently established its principal place of business was in Michigan by submitting a declaration of its counsel stating as such); *Deleon v. Gen. Motors, LLC*, No. 23-cv-01590-CJC(DFMx), 2023 WL 7019169, at *2 (C.D. Cal. Oct. 25, 2023) (holding the same); *Gonzales v. Starwood Hotels*, No. 16-cv-1068-GW (JEMx), 2016 WL 1611576, at *4 (C.D. Cal. Apr. 21, 2016) (collecting cases). Because Fliff's principal place of business was Pennsylvania at the time of contract formation, the Court finds there is a substantial relationship between Pennsylvania and the Parties.

In his Opposition, Nessim contends no such relationship exists because he and his counsel "discovered new information"[1] that indicated Fliff's principal

---

[1] Nessim and his counsel produced evidence indicating (1) Fliff is registered only as a "foreign" entity in Pennsylvania, (2) Fliff outwardly represents to prospective employees that its headquarters are in Austin, Texas, and (3) that Fliff's Co-Founder and CEO, Matt Ricci's, LinkedIn shows that he is personally based in Austin, Texas. [Dkt. 39 at 16–17].

place of business is in Texas. [Dkt. 39 at 16–17]. Fliff does not challenge this assertion outright. [Dkt. 40-2 at 4]. Rather, Fliff clarifies that, while Texas may be its headquarters today, Pennsylvania was its headquarters at the time of contract formation. *Id*. Despite the seeming unfairness of the situation as it exists, with Fliff being able to claim a connection to Pennsylvania despite it having moved to Texas where it now runs its business from, the Court finds, because Fliff's principal place of business "at the time of contracting" was Pennsylvania, there is a substantial relationship between Pennsylvania and the Parties. *See Tutor-Saliba Corp. v. Star Excess Liab. Ins. Comp., Ltd.*, No. 15-cv-1253 PSG (RZx), 2015 WL 13285089, at *3 (C.D. Cal. Apr. 23. 2015) (collecting cases).

Having found the Parties have a substantial relationship with Pennsylvania, the Court will apply Pennsylvania law unless Nessim can show Pennsylvania law is contrary to a fundamental California policy and that California has a materially greater interest in the issue. *Id*.

### 2. Contrary to a Fundamental California Policy

Here, Nessim claims Pennsylvania law is contrary to a fundamental California policy because Pennsylvania law "permits mobile and online sports betting," while California statutes and the California Constitution forbid such activities. [Dkt. 39 at 19–20]. Fliff argues in response there is no "material policy difference" between California and Pennsylvania because both forbid "unlicensed [i]nternet sports book operations." [Dkt. 40 at 11].

"To determine the public policy of a state, 'the constitution, laws, and judicial decisions of that state, as well the applicable principles of common law, are to be considered.'" *First Int'l Bank v. Ahn*, 798 F.3d 1149, 1156 (9th Cir. 2015). If a party meets its burden of establishing substantial relationship, the burden is on the challenging party to show the chosen state's law is contrary to a fundamental policy of California and that California has a materially greater

interest in the determination of the particular issue. *Mejia v. DACM, Inc.*, 268 Cal. Rptr. 3d 642, 648 (Cal. Ct. App. 2020). "To be 'fundamental,' a policy must … be a substantial one." Restatement of the Conflict of Laws § 187 comment g.

In this case, the Court declines to reach the issue of whether there is a conflict between California and Pennsylvania law because, even assuming *arguendo* that California law applies, the Court still **GRANTS** Fliff's Motion in accordance with the opinion below.[2]

### B. Existence of Agreement

Here, the Court finds an agreement to arbitrate exists between the Parties. In Section 13.1(a) of Fliff's Sweepstakes Rules the Parties agreed that "any and all disputes and causes of action arising out of or connected with the Sweepstakes, … , shall be resolved individually, … by final and binding arbitration under the rules of the American Arbitration Association." [Dkt. 39 at 10]. Fliff contends an agreement to arbitrate was created when Nessim checked a box indicating "he accepted the Terms of Use and Sweepstakes Rules." [Dkt. 36-1 at 14]. Importantly, Nessim does not challenge the existence of the agreement. [Dkt. 39].

Because Nessim did not challenge the existence of the arbitration agreement, the Court finds an agreement exists. *See Ortega v. Spearmint Rhino Comps. Worldwide, Inc.*, No. 17-cv-206 JGB (KKx), 2019 WL 2871156, at *8 (C.D. Cal. May 15, 2019) (citing *Star Fabrics, Inc. v. Ross Stores, Inc.*, No. 17-

---

[2] While the Court declines to reach this issue, it does note the conclusion is not as foregone as Nessim contends. [Dkt. 39 at 18–20]. At least one scholar has written positing "[w]hen one looks in detail at the way California and the federal government address sports betting, one walks away with the strong conviction that neither jurisdiction has addressed the issue with sufficient clarity and precision to justify criminalizing such transaction." James Fischer, *Is Online Sports Betting Illegal in California,* 18 Hastings Bus. L.J. 6, 2016 (2021).

cv-5877 PA (PLAx), 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017) ("Where a party fails to oppose arguments made in a motion, a court may find that the party has conceded those arguments or otherwise consented to granting the motion")).

### C. Whether Nessim's Claims Are Covered By the Agreement

The next question is whether Nessim's claims are within the scope of the arbitration agreement. As was the case above, Nessim does not contest that his claims fall within the scope of the arbitration agreement. [Dkt. 36-1 at 15–16; Dkt. 39]. Such acquiescence to Fliff's arguments constitutes concession on this point. *Star Fabrics*, 2017 WL 10439691, at *3. Therefore, the Court finds Nessim's claims are covered by the arbitration agreement.

### D. Delegation of Arbitrability

In its Reply, Fliff also argued for the first time that the Parties agreed to arbitrate arbitrability such that the arbitrator, rather than the Court, should determine the issues associated with arbitrability. *See* Dkt. 40 at 2–3. In support of this, Fliff argued that the arbitration agreement's incorporation of the AAA Rules constitutes clear and unmistakable evidence of the Parties' intent to have an arbitrator, rather than the Court, determine arbitrability. *Id*. Thus, the integral question the Court must answer here is, in the context of mass consumer contracts where at least one of the contracting parties is unsophisticated, whether incorporation of the AAA Rules constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability. After much research and review of the pleadings in this case, the Court finds this question is hotly debated by courts such that Fliff's argument warrants close examination.

#### 1. Incorporation of AAA Rules

"In general, 'whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1031

(N.D. Cal. 2022) (quoting *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (citations omitted)). "[T]he federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am.*, 724 F.3d at 1072; *see e.g.*, *Rent-A-Ctr., W., Inc., v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (noting in circumstances where the parties would have expected a court rather than an arbitrator to determine gateway issues of arbitrability, absent clear and unmistakable evidence to the contrary, courts should find such gateway issues are to be determined by the courts); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("If, … , the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question … namely, independently."); *MacClelland*, 609 F. Supp. 3d at 1031.

In *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015), the Ninth Circuit held incorporation of the AAA Rules constitutes clear and unmistakable evidence of parties' agreements to arbitrate arbitrability. However, in so holding, the Ninth Circuit explicitly limited its finding to cases involving arbitration agreements between *sophisticated* parties. *Id.* at 1131 ("we limit our holding to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.'"). Here, unlike in *Brennan*, Nessim is an *unsophisticated* party, and Fliff has produced no evidence to the contrary. [Dkt. 48 at 4]. After careful review of the relevant caselaw, the Court declines to extend *Brennan* to cases involving unsophisticated parties.

To begin, the Court recognizes the reach of *Brennan* is an undecided matter in the Ninth Circuit about which numerous qualified jurists disagree. Various courts have concluded that the holding of *Brennan* applies equally to both sophisticated and unsophisticated parties. *See e.g.*, *Patrick v. Running Warehouse*, LLC, No. 2:21-cv-09980-ODW (JEMx), 2022 WL 10584136, at *3 (C.D. Cal. Oct. 18, 2022); *Arellano v. Geodis Logistics LLC*, No. 5:23-cv-

00790-MCS-KKx, 2023 WL 6173471, at *3 (C.D. Cal. July 27, 2023), *Maybaum v. Target Corp.*, No. 2:22-cv-00687-MCS (JEMx), 2022 WL 1321246, at *5 (C.D. Cal. May 3, 2022); *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016); *Miranda v. Hyundai Motor Am., Inc.*, No. 8:22-cv-02193-JVS (JDEx), 2023 WL 6474450, at *15 (C.D. Cal. Oct. 2, 2023); *Gountoumas v. Giaran, Inc.*, No. 18-cv-7720-JFW(PJW), 2018 WL 6930761, at *6 (C.D. Cal. Nov. 21, 2018); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 991–92 (N.D. Cal. 2017); *Brumley v. Austin Ctrs. for Exceptional Students Inc.*, No. 18-cv-00662-PHX-DLR, 2019 WL 1077683, at *3 (D. Ariz. Mar. 7, 2019); *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (C.D. Cal. Mar. 3, 2015) (collecting cases).

While some courts have dubbed the above line of cases the "majority view," *Patrick*, 2022 WL 10584136, at *4, the Court has found substantial support for the proposition that *Brennan*'s holding should be limited to cases involving only sophisticated parties. *See e.g.*, *MacClelland*, 609 F. Supp. 3d at 1032 (collecting cases); *Magill v. Wells Fargo Bank, N.A.*, No. 4:21-cv-01877-YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021); *Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533-WHA, 2016 WL 6679561, at *3–6 (N.D. Cal. Nov. 14, 2016); *Dupler v. Orbitz, LLC*, No. 18-cv-2303-RGK (GSJx), 2018 WL 6038309, at *3 n.1 (C.D. Cal. July 5, 2018); *Slaten v. Experian Info. Solutions, Inc.*, No. 21-cv-09045-MWF (Ex), 2023 WL 6890757, at *3 (C.D. Cal. Sept. 6, 2023) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1117, 1124–26 (9th Cir. 2008)); *Cooper v. Agrify Corp.*, No. 21-cv-0061 RSL-JRC, 2022 WL 2374587, at *3 (W.D. Wash. June 2, 2022); *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682-LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014) *Galilea, LLC v. AGCS Marine Ins. Comp.*, No. 15-cv-84-BLG-SPW, 2016 WL 1328920, at *3 (D. Mont. Apr. 5, 2016). Various California courts have also found mere mention of the AAA Rules, or their equivalents, to not be clear and

convincing evidence of the parties' intent to arbitrate arbitrability. *See e.g.*, *Jack v. Ring LLC*, 309 Cal. Rptr. 3d 130, 142 (Cal. Ct. App. 2023) (collecting cases); *Gostev v. Skillz Platform, Inc.*, 305 Cal. Rptr. 3d 248, 160 (Cal. Ct. App. 2023).

Having considered the arguments on both sides of this debate, the Court finds, where at least one party is unsophisticated, mere incorporation of the AAA Rules or their equivalents is "insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability." *MacClelland*, 609 F. Supp. 3d at 1031.

### 2. Application Given the Unsophisticated Status of Nessim

Here, Fliff's Sweepstakes Rules provide:

"any and all disputes and causes of action arising out of or connected with this Sweepstakes, including but not limited to prizes awarded, shall be resolved individually, without resort to any form of class action, and exclusively by final and binding arbitration under the rules of the American Arbitration Association and held at the AAA regional office nearest the Participant (or for Canadian residents the International Centre for Dispute Resolution" [Dkt. 36-1 at 10–11].

The AAA Consumer Rule 14(a) separately provides:

"[t]he arbitrator shall have the power to rule or his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to arbitrability of any claim or counterclaim."

Based on the record before the Court, the AAA Rules above were not quoted or attached to the agreement. Moreover, Fliff did not provide a hyperlink from which users of their service could access the AAA Rules to view them before entering into the agreement. [Dkt. 36-1].[3] As such, when viewed

---

[3] The only hyperlinks present for consumers to access on Fliff's homepage were hyperlinks that would show the consumers the "Terms of Use" and "Sweepstakes Rules." [Dkt. 36-2 at 2].

from the standpoint of one of Fliff's prospective users, the only notice users would have that they would be agreeing to have an arbitrator, rather than a court, determine arbitrability is the mention that a binding arbitration will take place subject to the rules of the AAA Rules.  [Dkt. 36-1 at 10–11].

As Judge Chen noted in *MacClelland*, "common customers … should not be expected to understand that the incorporation by reference of the AAA Rules–without spelling out the actual provision– would mean that the validity and unenforceability of the arbitration provision would be resolved by an arbitrator rather than a court." *MacClelland*, 609 F. Supp. 3d at 1032.  To hold otherwise would be to treat the mere mention of the AAA Rules as some form of magical incantation that conjures up an understanding of AAA Rules in the mind of every single consumer regardless of if said consumers knows what the American Arbitration Association itself is or what arbitration is for that matter.

Given the agreement at issue did not contain an explicit delegation clause, and the incorporation by reference of the AAA Rules is insufficient to establish the Parties intended to arbitrate arbitrability in this case, the Court finds there is no clear and unmistakable evidence that the Parties agreed to arbitrate arbitrability.

Thus, the Court finds it is for the Court, not the arbitrator, to determine arbitrability.

### E.     Enforceability of the Arbitration Clause

Nessim argues Fliff's arbitration agreement is unenforceable under California law because (1) the agreement violated the *McGill* Rule, and (2) the agreement is unconscionable such that it should be unenforceable.  [Dkt. 39 at 24–31].  The Court will discuss each in turn.

#### 1.     The *McGill* Rule

Nessim argues Fliff's arbitration terms are invalid because "they preclude [Nessim] from seeking public injunctive relief in any forum—in violation of the

1  *McGill* Rule." [Dkt. 39 at 25]. In response, Fliff argues, Nessim's argument
2  fails because Nessim seeks "private, rather than public, injunctive relief." [Dkt.
3  40 at 3–4]. For the reasons stated below, the Court finds the *McGill* Rule
4  inapplicable to the present agreement and thus rejects Nessim's argument.

5        In *McGill*, "the California Supreme Court decided that a contractual
6  agreement purporting to waive a party's right to seek public injunctive relief in
7  any forum is unenforceable under California law." (the "*McGill* Rule") *Blair v.*
8  *Rent-A-Center, Inc.*, 928 F.3d 819, 822 (9th Cir. 2019). The Ninth Circuit has
9  since clarified the scope of *McGill* in *Hodges v. Comcast Cable Commc'ns, LLC*
10 by defining public injunctive relief as "forward-looking injunctions that seek to
11 prevent future violations of law for the benefit of the general public as a whole,
12 as opposed to a particular class of persons." *Hodges,* 21 F.4th 535, 540, 542 (9th
13 Cir. 2021). Thus, in cases where plaintiffs seek relief benefiting only "a
14 particular class of persons," the relief sought does not constitute public
15 injunctive relief under *Hodges*, and the *McGill* Rule does not apply. *See Torres*
16 *v. Veros Credit LLC*, No. 8:23-cv-00688-DOC-DFM, 2023 WL 5505887, at *5
17 (C.D. Cal. July 3, 2023) (holding where the relief sought by a plaintiff benefits
18 only a particular class of persons, it does not quality as injunctive relief under
19 *Hodges*).

20       Here, the Court concludes Nessim does not seek public injunctive relief
21 within the meaning of *Hodges*, and thus the *McGill* Rule is inapplicable.
22 Nessim's Complaint states he brings this action "on behalf of himself, and all
23 others similarly situated." [Dkt. 1 at 2]. Thus, the Court finds Nessim seeks
24 relief on behalf of himself and a *specific* class of California citizens, namely
25 other California customers of Fliff. Because Nessim's requested relief would
26 only benefit a "particular class of persons," the Court finds the relief sought by
27 Nessim cannot constitute public injunctive relief under *Hodges*. *See Torres*,
28 2023 WL 5505887, at *5; *see also Stock v. Wells Fargo*, No. 22-cv-00763-

DOC-ADS, 2023 WL 5505839, at *8 (C.D. Cal. July 13, 2020) (finding a plaintiff's request for injunctive relief sought on behalf of "themselves and a subset of Wells Fargo account holders" not public injunctive relief under *McGill*).

As Nessim does not seek public injunctive relief under *Hodges*, the Court finds the *McGill* Rule is not implicated. Therefore, the arbitration agreement is not invalid under the *McGill* Rule.

### F. Unconscionability

"Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision was 'unconscionable at the time it was made.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting Cal. Civ. Code § 1670.5(a)). To establish this defense to enforcement, the party opposing arbitration must show that the arbitration agreement is both procedurally and substantively unconscionable. *See Sanchez v. Valencia Holding Co.*, LLC, 353 P.3d 741, 749 (2015). While both procedural and substantive unconscionability must be present, they need not be present to the same degree. *Armendariz v. Found. Health Psychcare Servs.*, 6 P.3d 669, 690 (2000). Rather, courts utilize a "sliding scale" in which the more substantively oppressive the contract terms are, the less procedurally unconscionable they must be, or vice versa, for the contract to be rendered unenforceable. *Roth v. Jaguar Land Rover N. Am.*, LLC, No. 17-cv-01522 AG (DFMx), 2017 WL 10545074, at *3 (C.D Cal. Dec. 4, 2017). As it is the party opposing arbitration's burden to establish unconscionability, Nessim must show Fliff's arbitration agreement is both procedurally and substantively unconscionable. *Sanchez*, 353 P.3d at 749

#### 1. Procedural Unconscionability

Nessim contends the arbitration agreement is procedurally unconscionable for three reasons: (1) Nessim had no bargaining power against

-15-

Fliff, (2) Nessim had no reasonable market alternatives, and (3) there is "vast disparity in the sophistication between the parties." [Dkt. 39 at 29]. For the reasons stated below, the Court finds only a minor amount of procedural unconscionability arises from this arbitration agreement.

"The analysis for procedural unconscionability 'begins with an inquiry into whether the contract is one of adhesion.'" *Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946, 952 (N.D. Cal. 2023) (citations omitted). Where an adhesion contract is found, courts analyze the contract for oppression and surprise.[4] *Id.*; *Burger v. Northrop Grumman Sys. Corp.*, No. 2:21-cv-06761-AB (MRWx), 2021 WL 8322270, at *6 (C.D. Cal. Oct. 27, 2021) (citing *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dec., LLC*, 282 P.3d 1217, 1231 (2012)). To determine whether an adhesion contact is oppressive and surprising such that it is procedurally unconscionable, "California courts considers several factors, including: (1) the relative bargaining power and sophistication of the parties, (2) the complaining parties' access to reasonable market alternatives, and the degree to which an offending provision of a contract is 'buried in a lengthy … agreement.'" *Donovan*, 649 F. Supp. 3d at 953 (citing *Shierkatz RllP v. Square, Inc.*, Case No. 21-cv-08689-HSG, 2015 WL 9258082, at *9 (N.D. Cal. Dec. 17, 2015)). California courts also consider whether the contract was for a "nonessential recreational activity." *Pokrass v The DirecTV Grp., Inc.*, No. 07-cv-423-VAP, 2008 WL 2897084, at *6 (C.D. Cal. July 14,

---

[4] "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2005) (citations omitted).

2008) (citing *Belton v. Comcast Cable Holdings*, *LLC*, 60 Cal. Rptr. 3d 631, 650 (Cal. Ct. App. 2007)). The Court now turns to the analysis of Fliff's arbitration agreement.

First, the arbitration agreement is clearly an adhesion contract because Nessim is an unsophisticated party, he had no opportunity to negotiate with Fliff, and Fliff offered the agreement on a "take-it-or-leave-it" basis. [Dkt. 39 at 25]; *Burger*, 2021 WL 8322270, at *6 (citation omitted) ("'An adhesive contract is standardized, …, and offered by the part with the superior bargaining power on a 'take-it-or-leave-it basis.'"). As such, the Court finds the agreement was a contract of adhesion.

Second, the Court finds minimal procedural unconscionability here because the contract at issue is for mobile sports betting, a nonessential recreational activity, and California courts routinely "decline[] to find procedural unconscionability in contracts for nonessential recreational activities." *Pokrass*, 2008 WL 2897084, at *7; *Lhotka v Geographic Expeditions, Inc.*, 104 Cal. Rptr. 3d 844, 850 (Cal. Ct. App. 2010) (noting the "nonessential nature of recreational activities is a factor to be taken into account in assessing whether a contract is oppressive"); *Belton*, 60 Cal. Rptr. 3d at 650 ("when the challenged term is in a contract concerning a nonessential recreational activity, the consumer always had the option to simply forgoing the activity"); *McCabe v. Dell, Inc.*, No. 06-cv-7811-RGK, 2007 WL 1434972, at *3 (C.D. Cal. Apr. 12, 2007) (enforcing an arbitration agreement where the contract was for a consumer non-essential good).

Third, the Court also finds minimal procedural unconscionability because Nessim had available reasonable alternatives within the relevant market to Fliff's services. [Dkt. 40 at 6]. Whereas here, a plaintiff willingly engages in illegal online sports betting within California, the relevant market for the Court to examine for other market alternatives is the illegal sports betting market. In that

regard, Fliff provided evidence showing Nessim had a "bevy" of platforms available to him from which he could sports bet online within California.[5] *Id*. As such, the Court finds Nessim had other reasonable market alternatives to Fliff's services. Because Nessim had other reasonable market alternatives, the Court finds little procedural unconscionability in this case. *See Flores v. Coinbase, Inc.*, 22-cv-8274-MWF (KS), 2023 WL 3564756, at *6 (C.D. Cal. Apr. 6, 2023) (finding a minimal degree of procedural unconscionability where "nothing in the record suggest[ed]" defendant was the only option for cryptocurrency services).

Thus, given that the contract was for a non-essential recreational service, and Nessim had other reasonable market alternatives, the Court finds a minimal degree of procedural unconscionability arises from the arbitration agreement.

### 2. Substantive Unconscionability

"Substantive unconscionability focuses on the terms of the agreement and whether those are so 'overly harsh' or 'one-sided' as to 'shock the conscience.'" *Flores*, 2023 WL 3564756, at *6 (quoting *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002)). Because Nessim only established a minimal amount of procedural unconscionability, Nessim must show "significant substantive unfairness to avoid arbitration." *MacClelland*, 609 F. Supp. 3d at 1035. "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Abramson v. Juniper Networks, Inc.*, 9 Cal. Rptr. 3d 422. 437 (Cal. Ct. App. 2004) (citations omitted).

---

[5] Contrary to Nessim's arguments, the fact that these other betting platforms are illegal under California law does not render the platforms unreasonable alternatives in this case. [Dkt. 39 at 29 n. 6]. As emphasized above, Nessim himself engaged in illegal gambling and now is suing over the fact that Fliff is an illegal means of gambling within California. [Dkt. 1 at 3 & 14]. Given Nessim's admitted use of an allegedly illegal gambling service in the Complaint, the other reasonable alternatives in this context would be other illegal means of gambling.

Here, Nessim argues the arbitration agreement is substantively unconscionable because the agreement limits statutorily imposed remedies in violation of *Armendariz*. [Dkt. 39 at 30]. Nessim seems to rely on a quote from *Armendariz* in which the Supreme Court of California states "[t]he principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed." *Armendariz*, 6 P.3d at 682. After careful review of *Armendariz*, the Court finds Nessim and his counsel mischaracterize the above quote. The quote is not made in relation to a discussion of substantive unconscionability. *Id*. Rather, it is made in analyzing whether an arbitration agreement's limitation of remedies in Fair Employment and Housing Act actions specifically renders the arbitration agreement contrary to public policy and thus unlawful. *Id*. at 683.[6]

Given Nessim's only argument as to why the arbitration agreement is substantively unconscionable rests on a quote that actually has nothing to do with unconscionability, the Court finds Nessim failed to meet his burden in establishing substantive unconscionability in this case. *AO2, LLC v. Respironics, Inc*., 601 F. Supp. 3d 619, 624 (C.D. Cal. 2022) ("'The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability.'") (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). Further, even if Nessim had couched the above argument as one involving a violation of public policy, the argument would still fail because Nessim failed to show Fliff's arbitration agreement impermissibly limited statutorily imposed remedies available under the UCL. *See Regueiro v. FCA US, LLC.,* No. 2:22-cv-05521-SPG-MAR, 2023 WL 3564761, at *10 (May

---

[6] The Court finds it notable that the Supreme Court of California did not even mention unconscionability until the section of the opinion following the quote. *Id*. at 689.

4, 2023) ("Injunctive relief and restitution are the only available remedies under the UCL.") (citations omitted); [*see also* Dkt. 39 at 30 (Nessim arguing the arbitration agreement is invalid because it limits "statutorily imposed remedies [] such as punitive damages, consequential damages, and attorneys' fees.")].

Because Nessim failed to establish substantive unconscionability, the Court finds Nessim failed to establish the arbitration agreement is unconscionable under California law. *Laster v. T. Mobile USA, Inc.*, 407 F. Supp. 2d 1182, 1187 (S.D. Cal. 2005) ("An adhesion contract is unconscionable when *both* procedural and substantive unconscionability are present."); As such, the arbitration agreement is enforceable.[7]

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion and **STAYS** this action as to all parties and claims pending the result of arbitration. The Court hereby **ORDERS** the parties to file a joint report every 120 days regarding the status of the arbitration process.

The Clerk is **DIRECTED** to close the case administratively.

**IT IS SO ORDERED.**

DATED: January 5, 2024

SUNSHINE S. SYKES
United States District Judge

---

[7] As the Court has found Nessim failed to establish the arbitration agreement was unconscionable, the Court need not reach the question of severability. [Dkt. 39 at 31–35].

-20-